## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 16 2016, 6:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Susan E. Schultz
Corydon, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Robert J. Henke
Deputy Attorney General

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the matter of Se.G. and So.G.: | May 16, 2016 |
| | Court of Appeals Case No. 31A01-1509-JC-1476 |
| R.N. (Mother), *Appellant-Respondent,* | Appeal from the Harrison Circuit Court |
| v. | The Honorable John T. Evans, Judge |
| The Indiana Department of Child Services, *Appellee-Petitioner.* | The Honorable Lisa Garcia Reger, Juvenile Referee |
| | Trial Court Cause No. 31C01-1504-JC-28 31C01-1504-JC-29 |

**Vaidik, Chief Judge.**

# Case Summary

[1] R.N. (Mother) and K.G. (Father) divorced shortly after K.G.'s father molested one of their children in the presence of Mother. As part of the divorce, Mother agreed that Father would have sole custody of the children and that she would not have any parenting time. The children lived with Father and his new wife. Four years later, the children were adjudicated children in need of services (CHINS) after Father murdered their stepmother and then killed himself while the children were home. The trial court ordered that Mother, who had not seen her children in four years, could not start visiting them until recommended by a psychologist.

[2] The evidence is sufficient to support the CHINS determination—in particular, the court's conclusion that treatment is unlikely to be provided or accepted without the coercive intervention of the court. Mother previously failed to intervene when her child was being molested by his grandfather and she has not had contact with the children in the four years since that allegation was substantiated by the Indiana Department of Child Services (DCS). Further, although the dispositional order delays visitation until Mother and the children complete additional therapy, we find that the order "provides a reasonable opportunity for participation by the child's parent" according to Indiana Code section 31-34-19-6. We therefore affirm the CHINS adjudication and dispositional order.

# Facts and Procedural History

[3] Mother and Father had two sons, So.G., born in December 2007, and Se.G., born in February 2009. In September 2011, while Mother and Father were still married and living together, DCS investigated an allegation that So.G.'s paternal grandfather molested him while Mother was in the room. DCS Family Case Manager (FCM) Channell Hood investigated the allegation. Shortly thereafter, Father agreed to a safety plan that required him to ensure that Mother had no unsupervised contact with So.G. unless advance notice was given to FCM Hood. During the investigation, Mother admitted that she observed the sexual abuse. According to FCM Hood, Mother said "she didn't know what to do. I believe she said she was numb." Tr. p. 60. In December 2011, DCS substantiated the child-molesting allegation against the grandfather and substantiated the allegation of "environment life[/]health endangering" against Mother. *Id.* at 64.

[4] Four months later, Mother and Father got divorced. As part of the divorce, Mother agreed that Father would have sole custody of the children and that she would not have any parenting time. As a result, Mother has not had contact with the children since 2011. She remarried and currently lives in Louisiana with her husband and his daughter.

[5] Father also remarried, and the two boys lived with Father and his wife until April 25, 2015. That day, Father shot and killed his wife before turning the gun on himself. Four children were in the home during the murder-suicide,

including So.G. and Se.G. The two boys were in a different part of the house, so they did not see the shooting. However, after hearing the gunshots, the boys went to investigate and they discovered their stepmother's and Father's bodies.

[6] The police reported the shooting to DCS, and FCM Melinda Coleman came to the house. She was told that Mother's parental rights had been terminated and that Mother was living in either Texas or Louisiana. FCM Coleman placed the children with Father's half-brother and his wife. Later that night, FCM Coleman contacted Mother and learned that her parental rights had not been terminated after all and that she was living in Louisiana.

[7] DCS filed a CHINS petition two days after the murder-suicide, and a fact-finding hearing was conducted before a juvenile referee eight weeks later. At the hearing, the children's therapist testified that "present contact between the children and [Mother] will absolutely re-traumatize those kids every single time [the contact] happens. And I'm not sure we will get through trauma treatment if we are retriggering them constantly." *Id.* at 93. FCM Coleman testified that the children were not placed with Mother after DCS received her contact information for several reasons: Mother had not seen the children in four years, DCS substantiated an allegation against Mother in 2011, the therapist recommended against contact with Mother, Mother lives in Louisiana, and DCS is uncertain about Mother's mental capacity to care for the children.

[8]     Following the fact-finding hearing, the referee submitted a recommended order finding the children to be CHINS, and the trial court signed the order as written. The order includes the following findings of fact:

> [The children] witnessed the murder of their step-mother and suicide of their father and are in need of counseling and treatment to address the trauma therefrom.
>
> [So.G.] has been sexually abused by a family member in the presence of Mother and [Se.G.]. . . . Both children are in need of counseling to address this trauma.
>
> The mother has not seen her children for a period of approximately four years and has taken no steps to amend or revise the court order which suspends her right to parenting time. The children are afraid of their mother and are in need of counseling and treatment to address the four year absence of their mother. The mother neglected to seek counseling for her children or herself during that four year period.

Appellant's App. p. 12. The court, then, concluded that:

> The children's mental health is seriously endangered due to the acts and omissions of the parents of the children.
>
> * * * * *
>
> The children need care, treatment, or rehabilitation that they are not receiving; and are unlikely to be provided or accepted without the coercive intervention of the court.

*Id.*

[9]     At the dispositional hearing, the children's therapist again testified that contact with Mother would be harmful. The therapist recommended that Mother enter into therapy in Louisiana, and once Mother's therapist had sufficient

information about Mother's condition, the two therapists could work together to develop a plan for reestablishing contact between Mother and the children. The referee submitted her recommendation, and the court ordered that Mother complete a psychological evaluation and any recommended treatment, and that "DCS shall arrange for a licensed psychologist to complete an independent review of possible visitation between the mother and child[ren] and make a separate recommendation. Visitation will begin once recommended." Appellant's App. p. 18, 23. Mother now appeals both the CHINS adjudication and the dispositional order.

# Discussion and Decision

[10] Mother makes two arguments: there is insufficient evidence to conclude that the necessary treatment for the children is unlikely to be provided or accepted without the coercive intervention of the court, and that the dispositional order impermissibly allows a psychologist to decide when visitation should begin.[1]

---

[1] Mother also argues that the referee did not submit sufficient findings to permit child hearsay into evidence during the fact-finding hearing. *See* Ind. Code § 31-31-3-6 (requiring juvenile referees to "submit findings and recommendations in writing to the juvenile court, which shall enter such order as it considers proper"). However, the child hearsay addressed only the questions of whether the children were endangered and in need of treatment. On appeal, Mother agrees that the children have been endangered and require treatment. There is also sufficient evidence without the child hearsay to substantiate Mother's role in the 2011 molesting of So.G. by his grandfather. Therefore, the admission of the hearsay, if it was in error, would be harmless error. Accordingly, we do not address Mother's arguments regarding the admission of the child hearsay.

# I. Insufficient Evidence

Mother contends that there is insufficient evidence to support the CHINS determination. In reviewing a trial court's determination that a child is in need of services, we neither reweigh the evidence nor judge the credibility of the witnesses. *In re S.D.*, 2 N.E.3d 1283, 1286 (Ind. 2014). Instead, we consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom. *Id.* at 1287.

Here, the trial court adopted the findings and conclusions recommended by the juvenile referee according to Indiana Code section 31-31-3-6. When the trial court enters findings of fact and conclusions, we apply a two-tiered standard of review. *In re A.C.*, 905 N.E.2d 456, 461 (Ind. Ct. App. 2009). We first consider whether the evidence supports the factual findings and then whether the findings support the judgment. *Id.* Findings are clearly erroneous when the record contains no facts to support them either directly or by inference, and a judgment is clearly erroneous if it relies on an incorrect legal standard. Id.

In this case, the CHINS petition was filed pursuant to Indiana Code section 31-34-1-1, which provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that:

> (A) the child is not receiving; and

> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[14] Mother agrees that the children have been endangered and require treatment. She only disputes "the court's conclusion, without factual recitation, that the care, treatment, or rehabilitation needed by the children was unlikely to be provided or accepted without the coercive intervention by the State." Appellant's Br. p. 23. However, both the factual recitation and the record support this conclusion. First, the court found that "So.G. has been sexually abused by a family member in the presence of Mother and Se.G." Appellant's App. p. 12. This finding is supported by testimony that DCS substantiated an allegation of "environment life[/]health endangering" against Mother in 2011 because she did not respond appropriately when she saw her son being molested by her father-in-law. Tr. p. 64. Second, the court found that Mother, who had not seen her children in four years, did not take any steps during that time to amend or revise the court order that suspended her right to parenting time. It was not clearly erroneous for the court to infer that its intervention will be required based on Mother's past inability to intervene on behalf of her children. Moreover, the children's therapist testified that contact with Mother right now "would be traumatic and devastating" and would impede the children's recovery. Tr. p. 98-99.

[15] Nevertheless, Mother argues that this case is factually similar to *D.B. v. Indiana Department of Child Services*, 43 N.E.3d 599 (Ind. Ct. App. 2015), *trans. denied*. In *D.B.*, the father lived in another state and had not seen his two-year-old daughter in sixteen months. DCS petitioned to have the child declared a CHINS when mother was murdered. This Court determined that there was insufficient evidence to overcome the presumption that the father was a fit and capable parent. *Id.* at 606. This case is easily distinguishable from *D.B.* because Mother has a substantiated allegation of "environment life[/]health endangering" from 2011, which was the last time she had contact with the children.

[16] Based on the findings and the record in this case, it was not clearly erroneous for the court to conclude that coercive intervention is required, to ensure appropriate treatment for the children.

## II. Dispositional Order

[17] Mother also contends that the court erred when it ordered that visitation would not start until recommended by a psychologist. Mother argues that under Indiana Code section 31-34-19-6, it is impermissible for a court to allow a psychologist to determine when visitation will begin.

[18] Section 31-34-19-6 provides, in relevant part:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> * * * * *

(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[19] In this case, the court did enter a dispositional order that will ultimately give Mother a "reasonable opportunity" to participate in the care of her children. The children's therapist testified at the fact-finding and dispositional hearings that contact with Mother would hinder the children's treatment and that she did not recommend it at that time. The court, therefore, could have simply ordered no visitation. But the therapist also testified that visitation could be appropriate after Mother begins therapy and Mother's and the children's therapists can jointly consider when and how visitation should be introduced. The court crafted a dispositional order reflecting the therapist's recommendation for achieving future visitation. The order also permits visitation to begin as soon as it is recommended by a psychologist, without requiring an additional court order. The dispositional order is well supported by the testimony and recommendation of the children's therapist, and it provides a reasonable opportunity for Mother's participation in light of the children's present therapeutic needs.

[20] Mother further argues that "absent specific directions of the court to commence visitation between [Mother] and her children, there is a risk that there will be no progress toward reunification[.]" Appellant's Br. p. 29. This risk is addressed by the periodic case review. Indiana Code section 31-34-21-2 requires the court to conduct a formal hearing at least every six months to review the case of each CHINS under the supervision of DCS. In addition, Indiana Code section 31-

34-23-1 provides that the court may amend the dispositional order on its own motion or the motion of a parent, among others. Sections 31-34-21-2 and 31-34-23-1, taken together, ensure that the court will continue to oversee progress on the dispositional order, Mother will have an ongoing opportunity to present evidence regarding visitation, and the court may intervene if necessary.

[21] The dispositional order is in the best interest of the children, and the order provides Mother with a reasonable opportunity to participate. We, therefore, find no error.

[22] Affirmed.

Barnes, J., and Mathias, J., concur.